UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHERRY HORTON et al.,

      Plaintiffs,

v.                                Case No. 8:93-cv-1849-T-23MAP

METROPOLITAN LIFE INSURANCE
COMPANY et al.,

      Defendants.

_____/

## ORDER

A September 1, 2006, order (Doc. 384) granted in part Metropolitan Life Insurance Company's ("MetLife") emergency motion (Doc. 382) to enjoin Darrin L. Johns ("Johns") from proceeding to trial in an action ("the Pennsylvania action") in the Pennsylvania Court of Common Pleas.  Following a full hearing on MetLife's motion (Doc. 382), a September 15, 2006, order (Doc. 402) enjoins Johns from advancing in the Pennsylvania action pending further order of the court.

MetLife contends (Doc. 382) that the Pennsylvania action, premised upon allegedly unlawful life insurance sales practices, is barred by the April 4, 1994, class settlement agreement (Doc. 35, Ex. 1); the October 25, 1994, judgment (Doc. 226) and order approving the class action settlement agreement (Doc. 225); and the November 8, 1995, injunction (Doc. 294) enforcing the settlement.  Alleging that Johns is a class member whose current claims were released by the settlement (Doc. 382-1), MetLife asks to enjoin Johns forever from proceeding in the Pennsylvania action.

In response, Johns argues that the Pennsylvania action is beyond the scope of

the claims released by the settlement.  Specifically, Johns relies upon this court's order

adopting the Special Master's report in Privett v. Metropolitan Life Ins. Co., Case No.

00-cv-2244-T-23TBM, which report concludes that the class settlement bars only those

claims alleging that the plaintiff purchased (during the class period) a whole life

insurance policy "as a retirement and/or savings plan or vehicle, based in whole or in

part on written materials or other solicitations that allegedly did not fully disclose that

these plans were life insurance products" (Privett Doc. 40).

BACKGROUND

In February, 1993, Johns purchased a whole life insurance policy from MetLife

allegedly under the guise of a retirement savings plan.  On November 1, 1993, Horton v.

Metropolitan Life Ins. Co., Case No. 93-cv-1849-T-23A, commenced as a putative class

action (Doc. 1) on behalf of those who, like Johns, purchased a whole life policy from

MetLife allegedly under the guise of a retirement savings plan.  An April 22, 1994, order

(Doc. 48) certifies the class, requires notice to the class of the proposed settlement,

provides the form and method of notice, and prescribes the exclusive method for a class

member to "opt out" of the class or object to the proposed settlement.  Specifically, the

class certification order (Doc. 48) requires any potential class member (including Johns)

electing to "opt out" of the proposed settlement to submit a written request for exclusion

on or before June 13, 1994.  The prescribed notice cautions that any potential class

member who fails to timely "opt out" abandons "the right to file an individual lawsuit

against MetLife, or any person affiliated with MetLife, relating to the sale, solicitation,

and purchase of the whole life policies that are the subject of this lawsuit" (Doc. 35 at 55).

After failing to timely "opt out" of the settlement class, Johns belatedly moved (Doc. 160) on August 8, 1994 (eight weeks after the deadline), for an enlargement of time to "opt out." Following notice and a full hearing, a October 25, 1994, order (Doc. 221) denied Johns's motion, stating:

> [A]llowing class exclusions at this late stage will cause severe prejudice to MetLife. The settlement agreement reflects the parties bargained-for expectations. The opt-out deadline is a material provision of the settle-ment agreement. That deadline provided MetLife with an opportunity to determine the potential number of claims that may remain unresolved and to evaluate the objections to the proposed settlement. Prior to the fairness hearing, MetLife had the ability to assess that information and, pursuant to the terms of the settlement agreement, to terminate the proposed settlement. MetLife no longer has the right to consider the applicants' claims and decide whether to terminate the agreement.
>
> From MetLife's perspective, a bargained-for purpose of the $76 million agreement is to litigate the asserted claims in one forum and to bring finality to those claims. Allowing untimely exclusions without sufficient cause and forcing MetLife to litigate elsewhere would not only frustrate the purposes of the court-approved settlement and undermine the Court's orders but would be fundamentally unfair to MetLife, which is attempting to resolve all pending claims.

(Doc. 221 at 3). A subsequent order (Doc. 225) approves the class action settlement ("the class settlement") and provides that the class settlement "is and shall be binding on all settlement class members" (Doc 225 at 1).

The class's signal allegation was that certain MetLife agents solicited the sale of "retirement and/or other savings plans or vehicles" without fully disclosing that the product sold was actually whole life insurance (Doc. 224). Accordingly, the certified nationwide settlement class ("the class") comprises:

> [A]ll persons who purchased a MetLife whole life insurance policy as a retirement and/or other savings plan or vehicle, based in whole or in part on written materials or other solicitations that allegedly did not fully disclose that these plans were life insurance products, from (a) the Rick Urso & Associates sales office (or its predecessor office) between January 1, 1988 and October 31, 1993, or (b) any other sales office of MetLife between January 1, 1990 and October 31, 1993 . . . .

(Doc. 225).  A final judgment (Doc. 226) dismisses with prejudice the claims of the class and discharges MetLife (and its employees) from any related claim by any member of the class.  A November 8, 1995, order (Doc. 294) permanently enjoins any class member (and others) from litigating in any forum any claim "that [was] or could have been raised" in the class action.  Specifically, the permanent injunction provides:

> To implement its previous Order and Judgment dismissing settlement class members' claims with prejudice and on the merits and retaining jurisdiction to enforce the terms of the settlement, the Court hereby enjoins any and all other settlement class members and their agents, attorneys, successors, representatives, heirs and assigns, and all persons in active concert or participation with them and any of them, from pursuing in any forum other than this Court any claims that were or could have been raised in this action . . . including without limitation any and all claims for damages, rescission, equitable and legal relief . . . .

(Doc. 294).

Despite the permanent injunction, Johns sued in Pennsylvania on December 4, 1999, alleging misrepresentation by MetLife of the performance and cash value accumulation of the whole life insurance policy purchased from MetLife in February, 1993 (Doc. 382-8).  On January 7, 2000, MetLife removed the Pennsylvania action to this court as <u>Johns v. Metropolitan Life Ins. Co.</u>, Case No. 8:00-cv-693-T-23MSS, which action was later consolidated into this case.  A May 7, 2003, order deferentially remanded the Pennsylvania action, stating that "[a] more efficient approach is for the

parties, in a court having full jurisdiction over the action, to litigate whether the <u>Horton</u> settlement bars the claims and to exhaust opportunities to amend the complaint before this Court considers an injunction" (Doc. 380).  On August 31, 2006, the Honorable R. Stanton Wettick, Jr., of the Pennsylvania Court of Common Pleas, issued a memorandum and order (Doc. 383-2) denying MetLife's motion for summary judgment in the Pennsylvania action and holding Johns's claims unimpaired by the class settlement.  Previously deferred, the question recurs whether Johns's claims in the Pennsylvania action are forever barred by the class settlement.

<u>A</u><small>NALYSIS</small>

Johns purchased his whole life policy (Doc. 382-8) from MetLife as an "investment" or "annuity" (and not as life insurance) during the class period (i.e., between January 1, 1990, and October 31, 1993).  Accordingly, Johns qualifies as a member of the settlement class.  Further, Johns concedes (and no party disputes) that Johns failed to timely "opt out" of the class as provided by the April 22, 1994, class certification order (Doc. 48).  Johns repeatedly refers to himself as a "class member" in his papers in this case (Doc. 160), and Johns's failure to timely "opt out" of the class settlement resulted solely from inexcusable neglect (Doc. 221).  Both Johns and his attorney understood the applicable deadline (and the consequences of ignoring it) but failed to follow the procedure necessary to "opt out" of the class (Doc. 221 at 3).[1]  <u>See</u>

---

[1] The October 25, 1994, order (Doc. 221) denying Johns's request (Doc. 160) to belatedly "opt out" of the class reveals that Johns admits to meeting with his attorney Kenneth Behrend "well before the June 13, 1994, deadline" but that Mr. Behrend failed to submit a request for exclusion to the claims administrator because of an unspecified "clerical error."  The order (Doc. 221) further observes that Johns explained neither the alleged "clerical error" nor the eight-weeks that lapsed before attempting to correct the alleged "error."  Because inadvertence of counsel (especially if unexplained) fails to constitute excusable neglect, the order (Doc. 221) denies Johns's motion (Doc. 160).

Haney v. Miami-Dade County, No. 05-16266, 2006 WL 2494412 (11th Cir. Aug. 30, 2006).  Absent an effective election to "opt out" of the class, Johns is bound by the October 25, 1994, judgment (Doc. 226) and the order approving the class action settlement agreement (Doc. 225).  See Williams v. General Electric Capital Auto Lease, Inc., 159 F.3d 266, 274 (7th Cir. 1998); Terrell v. DeConna, 877 F.2d 1267, 1270 (5th Cir. 1989) ("Federal courts will bind a non-party whose interests were represented adequately by a party in the original suit."); Papilsky v. Berndt, 466 F.2d 251, 260 (2d Cir. 1972) (holding that an absent class member is "conclusively bound by the results of an action prosecuted by a [named plaintiff] ostensibly representing their interests").

Res judicata precludes not only those specific claims brought in an earlier complaint, but any claim that stems "out of the same nucleus of operative fact, or is based upon the same factual predicate."  Norfolk Southern Corporation v. Chevron, U.S.A., Inc., 371 F.3d 1285, 1290 (11th Cir. 2004); Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1239 (11th Cir. 1999).  Moving for a permanent injunction under the All Writs Act, MetLife argues (Doc. 382) that the Pennsylvania action, premised upon Johns's purchase from MetLife of a whole life insurance policy in February, 1993, is a thinly veiled attempt to re-litigate Johns's previously barred (and enjoined) "retirement plan" claim premised upon the same policy.[2]

_____

[2]MetLife emphasizes that Johns's sworn deposition testimony (Doc. 382-1 at 9-11) strongly confirms the class settlement's bar of the Pennsylvania action.  On April 8, 2005, Johns repeatedly testified that his sole dispute with MetLife arises from MetLife's representation that the product MetLife sold him in 1993 was a retirement plan, not an insurance policy (Doc. 382-13).  Johns also testified that he was "unaware" that he had ever purchased a life insurance policy and agreed that it was "[c]omplete news to [him]" that his Pennsylvania action claims that he knowingly purchased an insurance policy (Doc. 382-13).  In view of Johns's testimony, MetLife argues that Johns's "performance" and "vanishing premium" claims in the Pennsylvania action, premised on the whole life policy's anticipated payout at age sixty-five, "cannot honestly be severed" from those claims barred by the 1994 class settlement (Doc. 382-1 at 14).

Evaluation of a claim under *res judicata* requires consideration of whether the later claim necessarily involves "the same statutes, evidence, events or occurrences, parties, and witnesses" as a previously discharged claim. Norfolk Southern Corporation, 371 F.3d at 1290; Ragsdale, 193 F.3d at 1239. An earlier judgment is "conclusive regarding the matters that the parties might have litigated at that time." Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1357 (11th Cir. 1998)(emphasis added). Under *res judicata* principles, a judgment in a suit based upon a misrepresentation in the sale of a whole life insurance policy usually bars a subsequent suit based on another misrepresentation accompanying the sale of the same policy. See, e.g., Cahill v. Jewell, 181 F.3d 100 (Table), 1999 WL 357747 (6th Cir. May 12, 1999); Adams v. Southern Farm Bureau Life Ins. Co., 417 F.Supp.2d 1373 (M.D. Ga. 2006). Allowing a plaintiff to split such an action frustrates the goal of *res judicata*, which seeks the prevention of piecemeal litigation. Gen. Elec. Co. V. Deutz Ag, 270 F.3d 144, 157-58 (3d Cir. 2001).

However, "a somewhat modified form of *res judicata*" applies if a settlement agreement triggers the dismissal and the defendant's consequent discharge. See

_____

In response, Johns argues only that Johns's deposition testimony is "much broader" than the testimony permitted at the prospective trial in the Pennsylvania action, because "discovery into unrelated matters may lead to the discovery of admissible evidence" (Doc. 397 at 22).

Although not dispositive of the preclusion issue resolved by this order, Johns's deposition reveals the dubious nature of Johns's claims. A party may argue alternative (even contradictory) legal theories in a pleading, but a party may not, freely and without consequence, testify to alternative or contradictory versions of the facts. The undisputed facts are evidenced by the record, which (as established by Johns's deposition) unequivocally reveals that Johns's sole dispute with MetLife is premised upon Johns's unwitting purchase of a whole life insurance policy from MetLife under the guise of a retirement savings plan (Doc. 382-13).

Norfolk So. Corp. v. Chevron, U.S.A., Inc., 371 F.3d 1285, 1291 (11th Cir. 2004); Grimes v. Vitalink Comm. Corp., 17 F.3d 1553, 1557 (3rd Cir. 1998) (holding that a class action settlement is "not simply a contract entered into by private parties, but is one that has been given a stamp of approval by the court").  Although this court's October 25, 1994, judgment (Doc. 226) and order approving the class action settlement agreement (Doc. 225) are preclusive, such preclusion is controlled by the settlement agreement, the terms of which result from the parties' negotiation and the court's imprimatur. Norfolk So. Corp., 371 F.3d at 1288 ("Where the parties consent to dismissal based on a settlement agreement . . . the principles of *res judicata* apply (in a somewhat modified form) to the matters specified in the settlement agreement, rather than the original complaint."); W.J. Perryman & Co. V. Penn. Mut. Fire Ins. Co., 324 F.2d 791, 793 (5th Cir. 1963) ("The compromise, settlement, and release are as conclusive as a judgment would have been if the claim had been litigated rather than compromised and settled. The dismissal with prejudice adds *res judicata* to the release as barring recovery by the appellant.").

The express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a class action settlement.  Norfolk So. Corp., 371 F.3d at 1291 (holding that "to preclude a wider range of matters than those specified in the Agreement would frustrate the parties' expressed intent and bestow upon [the defendant] a windfall of immunity from litigation").  Because MetLife waived the right (a right guaranteed by the Due Process Clause) to litigate any issue released by the settlement agreement, "the conditions upon which [MetLife] has given

- 8 -

that waiver must be respected, and the instrument must be construed as it is written."

United States v. Armour & Co., 402 U.S. 673, 682 (1971).

Established rules of contract interpretation govern a class action settlement

agreement.  Monahan v. Comm'r, 321 F.3d 1063, 1068 (11th Cir. 2003) ("Principles

governing general contract law apply to interpret settlement agreements.").  If the words

of a contract convey a plain and primary meaning, resort to extrinsic evidence of a

party's intent or of some other latent meaning is both unnecessary and improper (and

often statutorily forbidden).  Monahan, 321 F.3d at 1068 ("If the agreement is found to

be free of ambiguity, its meaning can be declared by the court without the use of

extrinsic evidence.").  The contractual command featured in the settlement agreement

(Doc. 225) negotiated by the class representatives and confirmed by the court releases

those claims that:

> (i) [H]ave been or could have been asserted by [the named plaintiffs],
> other settlement class members or the settlement class in this action or (ii)
> have been, could have been, may be or could be alleged or asserted by
> any of the [named plaintiffs], other settlement class members or the
> settlement class against MetLife . . . on the basis of, connected with,
> arising out of, or related in whole or in part to any or all of the acts,
> omissions, facts, matters, transactions or occurrences that were directly or
> indirectly alleged, asserted, described, set forth or referred to in this action
> or that are related to sales solicitations described in the Second Amended
> Complaint . . . or the purchase of Whole Life Policies . . . , including
> without limitation any and all claims for damages, recission, equitable and
> legal relief . . . .

(Doc. 225; see Docs. 35, Ex. 1 & 294).  This solemn contractual undertaking by the

class, for the benefit of which MetLife paid $76 million, is substantively identical to the

release (1) in the settlement agreement (and in the proposed order attached to the

agreement) (Doc. 35, Ex. 1); (2) in the November 8, 1995, injunction (Doc. 294); and (3)

adopted by reference in the judgment (Doc. 226).

Johns's Pennsylvania complaint (Doc. 382-8) alleges that MetLife

misrepresented the performance of his 1993 whole life insurance policy, which Johns

allegedly purchased under the guise of a retirement plan.  Specifically, Johns claims

MetLife represented that, under the alleged "retirement plan," Johns would (1) accrue

$91,000.00 upon retirement in exchange for monthly payments of $60.00 for ten years

or (2) accrue $180,000.00 upon retirement in exchange for monthly payments of $60.00

until age sixty-five (Doc. 382-8).  However, the class settlement agreement (Doc. 226)

releases any claim a class member could have asserted, "including without limitation

any and all claims for damages, recission, [and] equitable and legal relief" (Doc. 226).

Johns's substantive claims in the Pennsylvania action unquestionably are

premised upon the same factual predicate (the misleading solicitation and sale of a

1993 whole life insurance policy under the guise of a retirement plan) as his class

claims, which were premised on the identical life insurance policy and released by the

class settlement.  See TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456, 460

(2d Cir. 1982) (holding that a court may "permit the release of a claim based on the

identical factual predicate as that underlying the claims in the settled class action");

Association For Disabled Am., Inc. v. Amoco Oil Co., 211 F.R.D. 457, 471 (S.D. Fla.

2002) (same); Alba Conte & Herbert Newberg, Newberg on Class Actions § 12:15 ("A

settlement may properly prevent class members from subsequently asserting claims

relying upon a legal theory different from that relied upon in the class action complaint,

but depending upon the same set of facts."). Because Johns seeks relief for matters released by the settlement agreement, the Pennsylvania action is barred.

Arguing against preclusion, Johns relies almost exclusively upon this court's order adopting the Special Master's report in Privett et al. v. Metro. Life Ins. Co. et al., Case No. 00-cv-2244-T-23TBM, which concluded that the class settlement bars only those claims arising from allegations that the plaintiff purchased (during the class period) a whole life insurance policy "as a retirement and/or savings plan or vehicle, based in whole or in part on written materials or other solicitations that allegedly did not fully disclose that these plans were life insurance products" (Privett Doc. 40). However, Johns's reliance on Privett is misplaced because the Special Master's determination depends exclusively upon Privett's distinctive facts, which are crucially dissimilar from those characteristic of the settlement class.[3]

In March, 2000, Mr. and Mrs. Privett (the "Privetts") sued MetLife and, based on alleged misrepresentations by MetLife and its agents, asserted claims for fraud, breach of fiduciary duty, negligence, and breach of contract (Privett Doc. 2). The Privetts alleged the December, 1991, purchase (in reliance on misrepresentations by MetLife) of

---

[3]Curiously, Johns also relies on this court's order adopting the Special Master's report in Binns v. Metropolitan Life Ins. Co., Case No. 00-cv-1305-T-23EAJ. On April 3, 2000, Binns sued MetLife and, based on alleged misrepresentations by MetLife and its agents, asserted claims for fraud, breach of fiduciary duty, negligence, bad faith, and breach of contract (Binns Doc. 27, Ex. A). Binns alleged that, in reliance on MetLife's misrepresentations, he purchased in September, 1993, a MetLife universal life policy and a MetLife Life 95 policy (policy number 932101391A). MetLife argued that the class settlement barred Binns's claims (Binns Doc. 22). The Special Master determined that Binns' Life 95 policy (but not his 1987 universal life policy, which fell outside the class definition) (1) was the type of policy (i.e., a whole life insurance policy) and (2) was purchased during the time (i.e., between January 1, 1990, and October 31, 1993) common to the class (Binns Doc. 37). In addition, the Special Master found that the Life 95 policy was sold to Binns as an "investment" or "annuity" and "not simply life insurance." The Special Master concluded that the class settlement barred those claims arising from Binns's purchase of the Life 95 policy. As a result, Binns provides no support for Johns's position.

three MetLife life insurance policies, including a $40,000 whole life policy on their daughter's life (policy number 912405978A).  Arguing that the class settlement barred the Privetts' claims, MetLife moved (Privett Doc. 5) to enjoin the Privetts' suit.

The Special Master determined that the Privetts' $40,000 whole life policy purchased in 1991 on their daughter's life (1) was the type of policy (i.e., a whole life insurance policy) and (2) was purchased during the time (i.e., between January 1, 1990, and October 31, 1993) common to the class (Privett Doc. 40).  From the outset, the Privetts claimed both an original aspiration to purchase life insurance and a persistent (correct) belief that they had in fact purchased life insurance (Privett Doc. 2).  The Privetts' action alleged that MetLife misled the Privetts into purchasing three new MetLife life insurance policies by claiming falsely that the cash-surrender value of a 1975 MetLife policy would pay for the new policies without the Privetts incurring any additional out-of-pocket expense (Privett Doc. 2).

Considering whether the class settlement bars every claim based on a whole life insurance policy purchased during the class period, the Special Master concluded (Privett Doc. 40) that the class settlement bars only a claim arising from the specific allegations common to the class (i.e., allegations that a plaintiff purchased a whole life insurance policy "as a retirement and/or savings plan or vehicle, based in whole or in part on written materials or other solicitations that allegedly did not fully disclose that these plans were life insurance products").  However, the Special Master also concluded (correctly) that the Privetts' claims arising from the 1991 whole life policy

were not precluded because MetLife never misled the Privetts to believe that they were

purchasing a "retirement plan" instead of an insurance policy:

> In summary, the rights affected by the class settlement are limited by
> the definition of the class itself.  All claims of misrepresentation regarding
> the purchase of a whole life policy between January 1, 1990, and October
> 31, 1993, based upon it being a retirement or savings vehicle are barred,
> but other claims for other types of misrepresentations, e.g., purchases
> made because an agent misrepresented a policy's cost or potential value
> are not.  Those are not Horton claims.

(Privett Doc. 40) (emphasis added).

In different words, a class claim consists of the measured difference between the

plan promised by MetLife and the policy unwittingly purchased by a customer.  A

prospective plaintiff who never relied on MetLife's misrepresentation of a plan (i.e., a

person who expected and received a policy) is neither bound by the class settlement

nor precluded from suing on the policy he knowingly purchased.  Because the Privetts

expected and knowingly purchased a policy, their claims based on that policy are

unencumbered by the class settlement.

However, a prospective plaintiff who relied on MetLife's misrepresentation of a

plan (i.e., a person who expected a plan but received a policy) is bound entirely by the

class settlement and precluded from suing on the policy he unwittingly purchased.  All

such claims were released by the express terms of MetLife's $76 million class

settlement.  Unlike the Privetts, Johns mistakenly purchased a policy disguised as a

plan.  Barred by the settlement agreement from suing over the difference between the

retirement plan he was promised and the insurance plan he received, Johns now may

not sue over the constituent parts of that difference.  The Special Master's broad dictum

(Privett Doc. 40), which permits "other claims for other types of misrepresentations" such as "purchases made because an agent misrepresented a policy's cost" (in contrast to a retirement plan's value), requires no contrary result.  Because Johns's claims fall outside the narrow exception recognized in Privett, Johns's claims are precluded and the Pennsylvania action is barred.  See Adams v. Southern Farm Bureau Life Insurance Co., 417 F.Supp2d 1373 (M.D. Ga. 2006).  A contrary result severely undermines the principles of finality and economy furthered by the class settlement.

CONCLUSION

As a result of the class settlement, Johns had the right in 1994 to accept payment and rid himself of the consequences of his unwitting purchase in 1993 of a whole life insurance policy issued by MetLife.  Johns elected neither to accept payment from the class settlement nor to "opt out" of the class.  With the $76 million class settlement, MetLife obtained the right not to be sued over the difference between the retirement plan MetLife promised Johns and the whole life insurance policy Johns actually received.  Johns's claims for performance and cash expectancy clearly seek relief for the difference between the promised plan and the received policy.  Hopelessly intertwined with his retirement and savings claims, Johns's current claims in the Pennsylvania action are released and barred by the express terms of the class settlement.  Williams v. General Electric Capital Auto Lease, Inc., 159 F.3d 266, 274 (7th Cir. 1998) ("It is not at all uncommon for settlements to include a global release of all claims . . . that the parties might have brought against each other."); Erie Telecommunications, Inc. v. City of Erie, Pa., 853 F.2d 1084, 1097 (3d Cir. 1988)

(holding that the broad language of a settlement "was obviously meant to put an end to all disputes arising out of" a franchise agreement transaction).

Accordingly, pursuant to the All Writs Act; the Anti-Injunction Act; the final judgment, enforcing injunction, and reservation of jurisdiction in this case; and this court's inherent authority to protect and enforce its jurisdiction, Darrin L. Johns, his attorneys, and all those (with notice of this injunction) acting in concert with him are **FOREVER ENJOINED** from advancing in any court and in any manner any claim in connection with a 1993 "whole life" insurance policy issued to Johns by MetLife.

ORDERED in Tampa, Florida, on October 17, 2006.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE